UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LORINE BLAKELY, LILLIAN M. BROWN, TIERNEY LOKEY, MABEL OWUSU, KIA THOMAS, LEOLA NANCY STONE, JULIA E. ROGERS, VERRETTA TERRY, ANGELA SALES-STEPHENS, ANGELA L. WALKER, MARLO WILLIAMS, MARY B. WILLIAMS, <br><br> Plaintiffs, <br><br> v. <br><br> BIG LOTS STORES, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   No. 2:10 CV 342 |

## OPINION AND ORDER

Plaintiffs Lorine Blakely, Lillian M. Brown, Tierney Lokey, Mabel Owusu, Julia E. Rogers, Angela Sales-Stephens, Leola Nancy Stone, Verretta Terry, Kia Thomas, Angela L. Walker, Marlo Williams, and Mary B. Williams filed a complaint against defendant Big Lots Stores, Inc. ("Big Lots") alleging claims of race discrimination, age discrimination, and retaliation. (DE # 1.) Plaintiffs allege that they were fired or constructively fired by Big Lots on the basis of race discrimination, age discrimination, and/or retaliation when Big Lots closed its store in Merrillville, Indiana ("the Merrillville store") and opened a new store in Hobart, Indiana ("the Hobart store"). Big Lots has moved to dismiss plaintiffs' complaint pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) for failure to state a claim. (DE # 16.) Plaintiffs have filed a response (DE # 21), and Big Lots has filed a reply. (DE # 24.)

Plaintiffs allege that they were all Big Lots employees at the Merrillville store which employed a majority of African American employees and was located in a predominantly African American area. (Pls.' Compl. ¶ 1, DE # 1.) The Hobart store was to be located in a predominantly Caucasian area. (*Id.*) Sales-Stephens is Caucasian and all other plaintiffs are African American. (*Id.* ¶¶ 3-15.) Blakely, Brown, Rogers, Stone, Terry, Thomas, Walker, and Mary B. Williams were all forty years old or older at the time they allege they were constructively fired and they were all full-time employees. (*Id.* ¶¶ 3, 4, 7, 9, 10, 11, 14.) Blakely, Brown, Rogers, Sales-Stephens, Stone, Terry, and Mary B. Williams worked at the store for fifteen years or more. (*Id.*) Owusu, a full-time employee, was thirty-five years old when she was constructively fired. (*Id.* ¶ 6.) Plaintiffs all allege that they were qualified to perform their jobs and were performing at an acceptable level when they were fired or constructively fired. (*Id.* ¶¶ 1, 16-27.)

Plaintiffs claim that in spring of 2009, Big Lots Stores, Inc. implemented its "Ready for Business" policy at its Merrillville store. (Pls.' Compl. ¶ 1.) District Manager Michael Batke told plaintiff Angela Sale-Stephens that the store did not have "the right caliber of people" and she should get rid of the "dead weight" at the store to further her career. (*Id.*) She was instructed to fire Blakely, Stone, and Owusu. (*Id.*) Batke offered to provide Sales-Stephens with applications from Big Lots' Highland and Portage stores that had mostly Caucasian applicant pools. (*Id.*) When she refused to implement Big Lots' "discriminatory policies," Sales-Stephens was progressively written up and then fired on May 5, 2009. (*Id.*)

2

Plaintiffs allege that on July 22, 2009, former District Manager Thomas Cagle, and Human Resources Representative John Hammerschmidt held a non-mandatory meeting at the Merrillville store to inform plaintiffs that the store would be closing and that the new Hobart store would be opening. (Pls.' Compl. ¶ 1.) At the meeting, plaintiffs were told that they could not transfer to the Hobart store and were given the option to transfer or accept severance pay. (*Id.*) The terms of the transfer were that 1) plaintiffs could be transferred to a store up to thirty miles away; 2) they would not be guaranteed full-time positions or their same job titles or pay; and 3) if they elected transfer but then later did not accept the specific transfer position they were offered, they would not be entitled to severance pay. (*Id.*) Plaintiffs allege that the Big Lots manager, named Scott, discouraged them from transferring. (*Id.*)

Plaintiffs Blakely, Lokey, Owusu, Rogers, Terry, Thomas, Walker, Marlo Williams, and Mary B. Williams accepted severance pay that would only be based on a maximum of twelve years of service. (Pls.' Compl. ¶ 1.) Plaintiffs Stone and Brown chose to transfer, but later withdrew their transfer requests and chose severance pay "due to fear." (*Id.*) On August 25, 2009, Big Lots announced its intention to retain its thirty Merrillville employees and to hire more help for the Hobart store. (*Id.*) However, plaintiffs allege that Big Lots only offered its Caucasian employees transfers to the Hobart store. (*Id.*) Plaintiffs were given the "run around" about transferring to the Hobart store. (*Id.*) Big Lots did not allow plaintiffs to have anything to do with the Hobart store and would not conduct a meeting for plaintiffs to voice their concerns. (*Id.*)

Plaintiffs allege that after Linda Gaboian, a Caucasian assistant manager, "faxed an editorial expressing dissatisfaction with Big Lots Stores, Inc.['s] termination of African[ ]American employees, Big Lots Stores, Inc. transferred four African[ ]American part-time employees to cover up its discrimination." (*Id.*)

Sales-Stephens also alleges that she was told not to display photographs of her mixed-race children because the Merrillville store was a "place of business." (Pls.' Compl. ¶ 1.) At the same time, other Caucasian managers were allowed to display pictures of their children. (*Id.*)

When considering a RULE 12(b)(6) motion to dismiss, the court accepts all of "the complaint's well-pleaded allegations as true" and draws "all favorable inferences for the plaintiff." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). A complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). To satisfy RULE 8(a), "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Supreme Court has held that to survive a motion to dismiss, a complaint must be plausible on its face, meaning that the plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To meet this standard, a complaint does not need detailed factual allegations, but it must go beyond providing

4

"labels and conclusions" and "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247, 251 (7th Cir. 1994) among other authorities). In other words, a complaint must give "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010); *Sanjuan*, 40 F.3d at 251 (stating that the plaintiff does not need to plead facts that establish each element of a cause of action and that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint").

**A.  Race discrimination**

Big Lots argues that both the Caucasian and African American plaintiffs have not pleaded plausible claims of race discrimination. (Def.'s Mem. in Support of Mot. to Dismiss 5-6.) First, as to the African American plaintiffs' claim of race discrimination, Big Lots admits that there is "arguably a sufficient number of factual allegations set forth in the [c]omplaint which, if proven, would state a claim for race discrimination under Title VII." (*Id.*) Nonetheless, Big Lots argues that this claim should be dismissed because plaintiffs have included an allegation that is fatal to it - that four African American employees were transferred to the Hobart store. (*Id.*) According to Big Lots, this allegation renders implausible the African American plaintiffs' claim that they were refused transfer because of race.

5

As Big Lots acknowledges, the African American plaintiffs have pleaded a plausible claim of race discrimination. *See Swanson*, 614 F.3d at 405 (stating that the plaintiff sufficiently pleaded a claim of race discrimination by pleading the type of discrimination that she thought occurred, who perpetrated the discrimination, and when it took place). The only issue is whether plaintiffs have rendered their claim implausible by also alleging that four African American employees were transferred to the Hobart Store. As explained below, the court finds that they have not.

The allegation that some African American employees were transferred does not mean it was implausible that other African American employees were constructively fired because of their race. By Big Lots' logic, employers could terminate employees because of their membership in a protected class with impunity as long as the employer also retained other members of the class. This is not the case. *Cf. Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 744 (7th Cir. 1999) (finding that a fired African American employee's claim of race discrimination survived summary judgment even though he was later replaced by an African American employee); *Marion County Coroner's Office v. E.E.O.C.*, 612 F.3d 924, 930 n.6 (7th Cir. 2010) (finding that an employment decision-maker's stated preference for employing African Americans was not negated by the fact that he hired Caucasian people especially when the evidence showed that he hired one Caucasian employee to maintain continuity in the office and another on an interim basis until an African American employee was put into the position).

There are several plausible theories that support a claim of race discrimination even if some African American employees were transferred. For example, a claim of disparate treatment can be proven in part under the direct method by circumstantial evidence that employees outside of a protected class received systematically better treatment than those within the class. *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009). Therefore, evidence that more Caucasian employees than African American employees were transferred into full-time positions could be circumstantial evidence of discrimination. Further, a requirement for a prima facie case of race discrimination under the indirect method is that the defendant treated similarly situated employees who were not in the plaintiff's protected class more favorably. *See McDonnell Douglas,* 411 U.S. at 802. Tellingly, there is no requirement that the plaintiff show that no other members of his or her class were treated favorably.

Plaintiffs could also argue that Big Lots only retained African American employees who adhered to certain racial stereotypes. In *Johnson*, the Seventh Circuit Court of Appeals discussed circumstances under which the same-actor inference, the inference that if the same person hires and fires an individual they are unlikely to have fired the individual because of a discriminatory motive, may not apply. 170 F.3d at 744-45. One circumstance that the court described was that "an employer might hire an employee of a certain gender expecting that person to act, or dress, or talk in a way the employer deems acceptable for that gender and then fire that employee if she fails to comply with the employer's gender stereotypes." *Id.* at 745. That same

7

reasoning can apply here - it is possible that Big Lots retained some African American employees that comported with its racial stereotypes while terminating others for failure to comply. Thus, at this stage, the African American employees have painted a story of race discrimination that holds together.

Additionally, the transfer of four African American employees must be viewed in context and will not negate other allegations that are consistent with discrimination. *Cf. Radentz v. Marion County,* __ F.3d __, 2011 WL 1237931, at *5-6 (7th Cir. Apr. 5, 2011) (finding that the district court erred in granting summary judgment for the employer in a reverse discrimination suit because Caucasian employees were hired when the decision-maker had stated an intent to replace Caucasian employees with African American employees, and the percentage of Caucasian employees, particularly full-time employees, had decreased significantly during his tenure). Here, the complaint alleges that four African American employees were transferred only after an editorial expressing dissatisfaction with Big Lots' termination of its African American employees was sent to Big Lots. (Pls.' Compl. ¶ 1.) Plus these four positions were only part-time whereas many of the plaintiffs had full-time positions. Therefore, its plausible that Big Lots only retained four part-time employees to attempt to avoid public criticism. The court makes no determination that these theories are true, but there are plausible legal theories that are consistent with the allegations in the complaint.

Second, Big Lots argues that Sales-Stephens cannot assert a claim of race discrimination because she did not check the box next to race discrimination in her

charge of discrimination to the United States Equal Employment Opportunity Commission ("E.E.O.C. charge") and her description in the charge did not indicate that race was a factor in her termination. A condition precedent to bringing a lawsuit for discrimination in a federal court is that the federal complaint fall within the scope of the E.E.O.C. charge. *Cheek v. W. & S. Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994). The dual purpose of this rule is to allows the E.E.O.C. and the employer an opportunity to settle the dispute and to provide the employer "some warning of the conduct about which the employee is aggrieved." *Id.*

As plaintiffs point out, the fact that Sales-Stephens did not check the box for race on her E.E.O.C. charge does not control what the scope of her related complaint in federal court can be. *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F.2d 164, 167-69 (7th Cir. 1976). Instead, the court must determine whether the claim in the complaint is "like or reasonably related to the allegations" in the E.E.O.C. charge and grows out of those allegations. *Id.* at 167. "To be 'like or reasonably related,' the relevant claim and the [E.E.O.C.] charge 'must, at minimum, describe the same conduct and implicate the same individuals.'" *Moore v. Vital Prods., Inc.,* __ F.3d __, 2011 WL 2022951, at *3 (7th Cir. May 25, 2011) (quoting *Cheek,* 31 F.3d at 501).

In this case, the allegations in Sale-Stephens' E.E.O.C. charge are reasonably related to those made in her complaint. The E.E.O.C. charge explained:

> I am Caucasian and married to an African American man. Prior to being fired, I had placed pictures of my mixed race children in my office. I was told by Mike Batk[e] and Loss Prevention Manager, Pat Gallo, to take the pictures

9

down. They said the reason I had to take them down is because this was a place of business. I believe the reason they wanted me to take them down was because of their mixed race. Other Caucasian store managers were allowed to put up pictures of their families.

(DE # 1-1 at 9.) Thus, the allegations in the E.E.O.C. charge and the allegations in the complaint involve a common factual basis, weighing towards a finding that they are reasonably related and that the latter grows out of the former. *See Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364, 368 (7th Cir. 1993). The difference between the two sets of allegations is that in her E.E.O.C. charge, Sales-Stephens did not specifically allege that she was terminated because of her race. She only alleges that she was fired out of retaliation for her refusal to implement Big Lots' race and age discrimination policies. (DE # 1-1 at 9.) Still Sales-Stephens alleged in her E.E.O.C. charge that Batke was both the person who asked her to take down the pictures and the person who fired her. (*Id.*) The allegations in the E.E.O.C. charge were sufficient to reveal the race discrimination aspect of Sales-Stephens' claims because they involved the same conduct and the same people.[1] *See e.g., Kristufek,* 985 F.2d at 368. While she may not have specifically alleged that she was terminated because of race, it seems that the conduct related to the pictures describes the evidence that Sales-Stephens will attempt to use to support her allegations

---

[1] Recently, the Seventh Circuit found that the charges in a plaintiff's complaint that he was terminated due to sex and race discrimination were not reasonably related to his charges of hostile environment based on race and sex in his E.E.O.C. charge. *Moore*, 2011 WL 2022951, at *4. There, even though the plaintiff had checked the boxes for race and sex discrimination, he stated in the charge that he was on medical leave and did not allege that he was terminated. *Id.* As explained above, unlike *Moore*, in this case the two sets of allegations involved the same conduct and individuals.

that she was fired because of her race. Further Sales-Stephens' E.E.O.C. charge alleged that Big Lots was using race as a factor in who to retain pending closure of the Merrillville Store and before opening the Hobart Store. Sales-Stephens' E.E.O.C. charge alleges that she was fired during this transition period. Thus Big Lots was put on notice of Sales-Stephens' race discrimination charge and the conduct underlying it. The court finds that Sales-Stephens' claim of race discrimination is within the scope of her E.E.O.C. charge, and she has thereby satisfied this condition precedent to bringing her claim.

Big Lots insinuates that Sales-Stephens cannot state a claim of race discrimination because she is Caucasian. (DE # 17 at 6.) However, the Seventh Circuit has "not yet decided whether an employer violates Title VII if it discriminates against an employee because the employee is involved in a relationship with a person of another race." *Ellis v. United Parcel Serv., Inc.*, 523 F.3d 823, 826 (7th Cir. 2008); *Ineichen v. Ameritech*, 410 F.3d 956, 961-62 (7th Cir. 2005). Other circuits have held that it is a violation of Title VII to discriminate against an employee on the basis of his involvement in an interracial relationship. *See e.g., Holcomb v. Iona College,* 521 F.3d 130 (2d Cir. 2008); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.,* 156 F.3d 581, 588-89 (5th Cir. 1998), *reinstated in relevant part on reh'g en banc, Williams v. Wal-Mart Stores, Inc.,* 182 F.3d 333 (5th Cir. 1999) (per curiam); *Parr v. Woodmen of the World Life Ins. Co.,* 791 F.2d 888, 891-92 (11th Cir. 1986). In fact, the Sixth Circuit has held that a Caucasian employee stated a claim upon which relief could be granted when he alleged that he was discharged in violation of Title VII

11

because his child was biracial. *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988, 994 (6th Cir. 1999). Therefore, at the motion to dismiss stage, the court will assume that Sales-Stephens may bring a Title VII claim for discrimination against her on the basis of her relationship to her African American husband and biracial children. *See Rampich v. Zema Sys. Corp.*, No. 95-C-5760, 1997 WL 285733, at * (N.D. Ill. May 22, 1997); *cf. Barleys v. Carpenter,* No. 10-cv-454, 2010 WL 3521589, at *5 (W.D. Wis. Sept. 7, 2010). Accordingly, plaintiffs' race discrimination claims will not be dismissed under RULE 12(b)(6).

**B.   Age discrimination**

Big Lots argues that no plaintiff has stated a claim of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). First, Big Lots argues that Owusu's claim of age discrimination must be dismissed because the complaint states that she was thirty-five when she was constructively discharged and the ADEA only protects employees who are at least forty years of age. Big Lots is correct. The complaint alleges that Owusu was thirty-five-years-old. (Pls.' Compl. ¶ 6.) The protection of the ADEA is "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631. Therefore, Big Lots' motion to dismiss will be granted as to Owusu's claim of age discrimination and this claim will be dismissed from the case.

Second, Big Lots argues that Thomas' and Walker's claims of age discrimination must be dismissed because they go beyond the scope of their E.E.O.C. charges. (DE # 17 at 3.) As is the case for a claim of race discrimination, the filing of a timely

charge to the E.E.O.C. with the same scope is a prerequisite for filing a suit of age discrimination in the federal courts. Plaintiffs argue that Thomas and Walker should be able to proceed on their claims of age discrimination because these claims were reasonably related to both their own E.E.O.C. charges and the E.E.O.C. charges of the other six plaintiffs claiming age discrimination. (DE # 21 at 8.) They claim that all of the claims of age discrimination were investigated together so Thomas' and Walker's age discrimination claims could reasonably be expected to grow out of that investigation. (*Id.*) They do not argue that Walker and Thomas checked the box for age discrimination or that the descriptions in their charges mention age. Indeed, Walker's and Thomas' E.E.O.C. charges do not mention age in any way. (DE # 1-1 at 14-15, 16-17.)

Because Walker's and Thomas' E.E.O.C. charges do not make any mention of age whatsoever, their claims of age discrimination are not reasonably related to their E.E.O.C. charges describing race discrimination. *Ajayi v. Aramark Bus. Serv., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003) (determining that the plaintiff's claims of age discrimination were beyond the scope of her E.E.O.C. charge when the E.E.O.C. charge made no mention of age and instead described three instances of discrimination based on national origin); *Holmes v. County of Cook*, No. 03-C-4772, 2006 WL 208706, at *7 (N.D. Ill. Jan. 24, 2006) (E.E.O.C. charge of discrimination based on race was not reasonably related to claims of sex, religion, or age discrimination); *Kilchrist v. Eli Lilly & Co.*, No. 1:03-cv-02009, 2004 WL 1490411, at *3 (S.D. Ind. June 30, 2004) (holding that the plaintiff's claim of sex discrimination was not within the scope of his E.E.O.C. charge

13

describing race discrimination even though the two claims involved the same general conduct and individuals); *Riley v. Lutheran Gen. Hosp.*, No. 97-C-3332, 1999 WL 184163, at *16 (N.D. Ill. Mar. 25, 1999).

Recognizing that their claims of age discrimination are outside the scope of their own E.E.O.C. charges, Thomas and Walker appear to be invoking the single-filing rule, which allows a plaintiff who has not filed a timely E.E.O.C. charge to rely on that of a plaintiff who has if the individual claims of the non-filing plaintiffs arise out of "sufficiently similar discriminatory treatment as those claims brought before the E.E.O.C.." *Horton v. Jackson County Bd. of County Comm'rs*, 343 F.3d 897, 900 (7th Cir. 2003) (discussing that the doctrine applies to class actions, that it may possibly not apply to suits with two complainants, and that if it did it should be limited to suits arising from the same conduct).

Thomas and Walker face an obstacle to application of the single-filing rule. Other circuit courts and district courts within the Seventh Circuit have found that the single-filing rule applies only to plaintiffs who did not file their own E.E.O.C. charges. *See e.g., Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 564-65 (2nd Cir. 2006) ("An individual who has previously filed an E.E.O.C. charge cannot piggyback onto someone else's E.E.O.C. charge."); *McQueen v. City of Chi.*, No. 09-C-2048, 2011 WL 1113192, at *10 (N.D. Ill. Mar. 23, 2011) (holding that the plaintiffs could not rely upon the single-filing rule because they filed their own timely administrative charges and were therefore limited to the claims described in their own charges); *Flemming v. United Parcel Serv.*,

No. 03-C-9391, 2004 WL 2314962, at *2 (N.D. Ill. Oct. 12, 2004). Here, Thomas and Walker filed E.E.O.C. charges stating and describing only claims of race discrimination. While other plaintiffs stated claims of race and age discrimination, it would have been reasonable for Big Lots and the E.E.O.C. to approach their investigation of and negotiation of Thomas' and Walker's claims based on the assumption that Thomas and Walker were only pursuing claims of race discrimination. Thus, the single-filing rule does not operate to exempt Thomas and Walker from the requirement that they file timely E.E.O.C. charges of age discrimination and thus their claims of violation of the ADEA will be dismissed from the suit.

Third, Big Lots argues that plaintiffs' complaint does not support a claim of age discrimination because it does not include any allegations which "if proven, would establish that substantially younger, otherwise similarly situated employees who worked at [the Merrillville store] were treated more favorably in connection with either the closing of [that store] or the opening of [the Hobart store]." (DE # 17 at 5.) However, while the complaint does not identify specific younger employees who were treated more favorably, it does allege that Big Lots discriminated against plaintiffs by "constructively firing [p]laintiffs and hiring others and permitting transfers to the Hobart Big Lots by younger Caucasian employees." (Pls.' Compl., Prayer for Relief ¶ a.) Plaintiffs claiming age discrimination have pleaded that they were over forty and that in the summer of 2009 they were not allowed to transfer to the Hobart store while younger people were able to transfer. These allegations are sufficient to "'raise a

15

reasonable expectation that discovery will reveal evidence supporting the plaintiff[s'] allegations" as required by RULE 8. *Brooks v. Ross*, 578 F.3d 574, 580-81 (7th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).; *Karagiannis v. Allcare Dental Mgmt, LLC*, No. 10-2085, 2010 WL 3724767, at *3 (C.D. Ill. Aug. 26, 2010) (finding that the plaintiff's allegations that his claim was based on age discrimination in violation of the ADEA and that the discrimination occurred in connection with his employment by the defendant in August 2009 were sufficiently plausible to survive a motion to dismiss); *Riley v. Vilsack*, 665 F. Supp. 2d 994, 997 (W.D. Wis. 2009).

At this stage, it is not necessary for plaintiffs to identify the specific employees who were treated more favorably. *See Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008) (explaining that "a plaintiff alleging employment discrimination . . . may allege these claims quite generally.") The Seventh Circuit has explained that "[a] plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else." *Swanson,* 614 F.3d at 404-05. As explained above, plaintiffs have met this standard. They do not have to identify the people who were allowed to transfer. Their complaint provides Big Lots with sufficient notice to investigate and defend their claim of age discrimination as required under RULE 8. *Tamayo*, 526 F.3d at 1084. This is especially true when Big Lots most likely has easy access to the information that it complains is

16

missing from the complaint - who was hired at and transferred to the Hobart store and what their ages were.

**C.     Retaliation**

Finally, Big Lots argues that Sale-Stephens' claim of retaliation should be dismissed for failure to state a claim. (DE # 17 at 6.) Big Lots argues:

> To be sure, the [c]omplaint alleges that "[w]hen Sales-Stephens refused to implement Big Lots Stores, Inc.'s discriminatory policies, she was progressively written up and ultimately fire on May 5, 2009." . . . Nowhere in the [c]omplaint, however, are there any factual allegations which, if proven, would support this bald conclusory assertion.

(*Id.*) Big Lots explains that while the complaint alleges that Sale-Stephens refused to fire three African American employees who were over forty, it does not allege that she was instructed to terminate them because of their age or race. However, in her E.E.O.C. charge Sales-Stephens stated that she believed Batke wanted her to terminate these employees because of their race and age. (DE # 1-1 at 9.) She alleged in her complaint that Batke provided her with applications from a mostly Caucasian candidate pool in order to replace Owusu, Stone, and Blakely who were African American.
(Pls.' Compl. ¶ 1.)

In its reply, Big Lots points out that the complaint alleges that Batke told Sales-Stephens that Blakely, Stone, and Owusu were dead weight, a highly paid book keeper, and a highly paid stocker. (DE # 24 at 6.) Big Lots argues that if these allegations are proved to be true, they would only show that Big Lots did not have high opinions of these workers, not that it discriminated against them. (*Id.*) However, Big Lots is asking

17

the court to require more of Sales-Stephens than it may at this stage. Her complaint alleges a plausible claim of retaliation. Sales-Stephens alleged that she performed her job at an acceptable level. (Pls.' Compl. ¶¶ 21, 31.) She alleged that she was instructed to terminate employees who were African American and over age forty due to Big Lots' discriminatory purpose, that she refused to do so, and that she was fired as a result. (*Id.* ¶ 1.) This is sufficient for a claim of retaliation to survive a motion to dismiss. *See Tamayo,* 526 F.3d at 1085.

For the foregoing reasons, Big Lots' motion to dismiss (DE # 16) is **GRANTED** as to Thomas', Walker's, and Owusu's claims of age discrimination in violation of the ADEA. It is **DENIED** as to all other claims. Thus the case proceeds as to all plaintiffs' claims of race discrimination, Sales-Stephens' claim of retaliation, and Blakely's, Brown's, Rogers', Stone's, Terry's, and Mary B. Williams' claims of age discrimination.

Plaintiffs' motion to respond to the motion to dismiss as a motion for partial summary judgment (DE # 22) and defendant's motion to strike (DE # 25) are **DENIED** because the outcome of the motion to dismiss would have been the same with or without consideration of the affidavits that plaintiffs attached to their response to the motion to dismiss. *Cf. Menominmee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).

**SO ORDERED.**

Date: June 29, 2011

 s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT