```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION
```

LORINE BLAKELY, LILLIAN M.          )
BROWN, TIERNEY LOKEY, MABEL         )
OWUSU, JULIA E. ROGERS, ANGELA      )
SALES-STEPHENS, LEOLA NANCY         )
STONE, VERRETTA TERRY, KIA          )
THOMAS, ANGELA L. WALKER, MARLO     )
WILLIAMS, MARY B. WILLIAMS,         )
                                    )
            Plaintiffs               )
                                    )
       v.                           )    Case No. 2:10 cv 342
                                    )
BIG LOTS STORES, INC.,              )
                                    )
            Defendant                )

## OPINION AND ORDER

This matter is before the court on the Motion to Compel Certain Discovery Responses [DE 47] filed by the plaintiffs, Lorine Blakely, Lillian M. Brown, Tierney Lokey, Mabel Owusu, Julie E. Rogers, Angela Sales-Stephens, Leola Nancy Stone, Verretta Terry, Kia Thomas, Angela Walker, Marlo Williams, and Mary B. Williams, on February 24, 2012, and the Motion to Compel Discovery from Plaintiffs [DE 48] filed by the defendant, Big Lots Stores, Inc., on March 28, 2012. For the reasons set forth below, the Motion to Compel Certain Discovery Responses [DE 47] is **GRANTED IN PART** and **DENIED IN PART AS MOOT,** and the Motion to Compel Discovery from Plaintiffs [DE 48] is **DENIED.**

## Background

In 2009, Big Lots closed Store Number 1739 in Merrillville, Indiana, and opened Store Number 5088 in a nearby area of Merrillville. The plaintiffs allege that Store 1739 was located in a predominantly African-American area and that Store 5088 was located in a predominantly Caucasian area. The plaintiffs filed a complaint alleging that African-American associates who worked at Store 1739 were discouraged from applying for a transfer to Store 5088 because of race. The plaintiffs initiated discovery and served Interrogatories and Requests for Production of Documents on Big Lots. Big Lots provided some responses but objected to certain discovery requests as irrelevant and overly broad.

In an attempt to resolve their discovery disputes, the plaintiffs sent a letter revising the terms of its requests to Big Lots on January 9, 2012. On February 6, 2012, Big Lots sent a letter to the plaintiffs requesting that deficiencies in their discovery responses be supplemented. On February 10, 2012, Big Lots responded to the plaintiffs' initial correspondence and explained that it objected to the following requests as irrelevant and overly broad: (1) previous discrimination complaints lodged against the defendant (Interrogatories 2 and 9, Requests 8 and 9); (2) all documents related to store closings in the Midwest Region from 2007 – 2010 (Interrogatory 13, Request 31); (3) work performance documents related to the plaintiffs' super-

visors (Request 26); and (4) information regarding employee transfers in Indiana between 2007 - 2010 (Interrogatory 14).

The plaintiffs filed a Motion to Compel Certain Discovery Responses on February 24, 2012. In return, Big Lots filed its response along with a Cross Motion to Compel Discovery from the plaintiffs, alleging that the plaintiffs failed to provide tax documents and information related to employment since termination. On March 13, 2012, the plaintiffs provided Big Lots with supplemental discovery responses, specifically six additional tax returns omitted from the plaintiffs' initial discovery response.

## Discussion

Discovery is a mechanism to avoid surprise, disclose the nature of the controversy, narrow the contested issues, and provide the parties a means by which to prepare for trial. 8 Wright & Miller, *Federal Practice and Procedure* §2001, at 44-45 (2d ed. 1994). To effectuate these purposes, the federal discovery rules are liberally construed. ***Spier v. Home Insurance Co.,*** 404 F.2d 896 (7th Cir. 1968); 8 Wright & Miller, *Federal Practice and Procedure* §2001, at 44 (2d ed. 1994). When discovery disputes arise, district courts have broad discretion. ***Hunt v. DaVita, Inc.***, ___ F.3d ___, 2012 WL 1560396, *4 (7th Cir. 2012); ***Patterson v. Avery Dennison Corp.***, 281 F.3d 676 (7th Cir. 2002) (citations omitted). Additionally, courts "should independently determine the proper course of discovery based upon the arguments of

the parties." ***Giles v. United Airlines, Inc.,*** 95 F.3d 492, 496 (7th Cir. 1996).

A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things." Federal Rule of Civil Procedure 26(b)(1). For discovery purposes, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." ***Chavez v. Daimler Chrysler Corp.***, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (*quoting* ***Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard. ***Sanyo Laser Prods., Inc. v. Arista Records, Inc.***, 214 F.R.D. 496, 502 (S.D. Ind. 2003). *See* ***Adams v. Target***, 2001 WL 987853, *1 (S.D. Ind. 2001) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."). *See also* ***Shapo v. Engle***, 2001 WL 629303, *2 (N.D. Ill. May 25, 2001) ("Discovery is a search for the truth.").

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Federal Rule of Civil Procedure 37(a)(2)-(3). The burden "rests upon the objecting party to show why a particular discovery request is improper." **Kodish v. Oakbrook Terrace Fire Protection Dist.**, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006). The objecting party must show with specificity that the request is improper. **Graham v. Casey's General Stores**, 206 F.R.D. 253, 254 (S.D. Ind. 2002). That burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." **Burkybile v. Mitsubishi Motors Corp.**, 2006 WL 2325506, *6 (N.D. Ill. Aug. 2, 2006) (internal quotations and citations omitted). Rather, the court's broad discretion in deciding such discovery matters should consider "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." **Patterson**, 281 F.3d at 681. *See also* **Hunt,** ___ F.3d ___, 2012 WL 1560396 at *4 (explaining that the district court has broad discretion in supervising discovery).

In the context of employment discrimination, "discovery is generally limited to information about employees in the same department or office, absent a showing of a more particularized need for, and likely relevance of, broader information." ***Chavez,*** 206 F.R.D. at 620. The rationale behind such a limitation is that only the motives of the supervisors who made the employment decisions affecting the plaintiff and other employees similarly situated are relevant to determining if the employment decisions at issue were improper. *See* **Owens v. Sprint/United Management Co.***,* 221 F.R.D. 649, 653-655 (D. Kan. 2004).

To determine the relevant scope of discovery in employment discrimination law suits, courts first determine who the similarly situated employees are. ***Gehring v. Case Corp.,*** 43 F.3d 340, 342 (7th Cir. 1994). To gauge comparison, courts consider other employees' circumstances and determine if they are close enough to the plaintiffs' claims. ***Balderston v. Fairbanks Morse Engine Div. of Coltec Industries***, 328 F.3d 309, 320 (7th Cir. 2003). The court then must determine which supervisors primarily were responsible for the employment decisions regarding the plaintiff and the similarly situated employees. ***Chavez***, 206 F.R.D. at 621. Generally, the court will limit discovery to information pertaining to the supervisor of the employee alleging discrimination and those identified as similarly situated unless the plaintiff demonstrates a particularized need for more infor-

mation. *Chavez*, 206 F.R.D. at 621. *See also* *Tomanovich v. Glen*, 2002 WL 1858795, *3 (Aug. 13, 2002) (explaining *Chavez*, 206 F.R.D. at 621).

As an initial matter, it will be helpful to set the parameters of discovery. Big Lots objected to numerous discovery requests on the ground that discovery should be limited only to the information pertaining to the supervisors involved in the hiring for Store #5088. Generally, in employment discrimination cases, discovery is limited to the supervisors responsible for making the employment decision. However, the plaintiffs allege that they were discriminated against because of a company policy that stemmed from a source above the store level. For a national retail store like Big Lots, the process of closing one store and transferring those affected employees to a new store inherently involves more individuals with supervisory power than the hiring supervisor of the newly opened store.

Further, as noted by both parties, Big Lots had a written transfer policy. Big Lots does not claim that only those supervisors in charge of hiring for Store #5088 created or implemented the written policy. In fact, the record indicates that the immediate supervisor of any employee interested in transferring was required to contact the Regional Human Resources Manager, but the record does not reveal which individuals made the ultimate

decision. Therefore, the regional managers were involved in the transfer decisions.

With that said, the court must set reasonable boundaries so as to avoid requests that are overly burdensome by considering the relevant pool of employees and supervisors. *Chavez,* 206 F.R.D. at 621. The complaint arises from alleged discriminatory acts against employees who sought transfer. Therefore, the relevant pool of employees is those individuals who were subjected to the same transfer procedure as implemented.

Because the motives of the supervisors who made the employment decisions are at issue, the geographic region must be limited to the area under supervision by the same persons who set the policies for Store #1739 and Store #5088. That is to say, because Big Lots' written transfer policy affects more than just those two stores, the relevant scope of policy makers is not limited to just those two stores. The target scope is those persons who carried out the transfer policy within the affected region. The record reveals that both stores were located in Region 7 of Big Lots' operating areas. Any transfer decisions made within Region 7 may have reflected discriminatory practices of the regional managers and are relevant to the plaintiffs' complaint.

With these restraints in mind, the court now will assess the specific discovery requests. In Request 31, the plaintiffs seek

all documents relating to store closings which occurred within the Midwest region between 2007 and 2010, including but not limited to staffing, compensation, transfers, and announcements. Interrogatory 13 asks for information related to all store closings in Indiana between 2007 and 2010. Big Lots argues that both requests are not relevant, and then attempts to transfer the burden to the plaintiffs to establish the relevancy. Big Lots' placement of the burden on the plaintiffs is misguided. The burden is on Big Lots to show why the requests are not relevant. See *Vajner v. City of Lake Station, Indiana,* 2010 WL 4193030, *2 (N.D. Ind. 2010) (explaining that the burden of proof is on the party opposing production of the discovery documents).

Big Lots is unable to satisfy its burden because the relevancy is readily apparent. Information related to other store closings in the relevant geographic area and time frame can be used to "test" whether Big Lots in fact applied its written policy or relied upon an "unwritten" policy. Such a determination may be probative of whether disparate treatment occurred.

Furthermore, the plaintiffs must prove that Big Lots applied a different transfer policy to the plaintiffs, either written or unwritten, than was applied to similarly situated transferees. By reviewing information regarding other store closings, the plaintiffs may ascertain admissible evidence that it can use to prove disparate treatment. Additionally, the plaintiffs may

9

discover that other store closings involved similar situations whereby African American employees were dissuaded from applying for transfer to a new store as a matter of official or unofficial pattern or practice. Even without a pattern or practice of disparate treatment, evidence of systemic discrimination is relevant to and probative of the issue of pretext. *Bell v. E.P.A.,* 232 F.3d 546, 552—53 (7th Cir. 2000). Therefore, the information requested in Request 31 and Interrogatory 13 is relevant to the plaintiffs' case.

Big Lots also alleges that because the plaintiffs failed to specify categories of documents, their requests were vague and ambiguous. Big Lots claims it is unable to ascertain the meaning of the words "staffing," "compensation," "transfers," and "announcements" even though they are being used in the context of an employment discrimination suit stemming from the closing of a store. In fact, Big Lots must have been able to deduce the scope of the request as it was able to provide satisfactory documentation to the plaintiffs regarding the closing of the Hobart, Indiana store. This court can expect Big Lots to produce similar documents for other relevant stores based on its demonstrated capability.

That said, Big Lots' point is not lost with this court. As written, the plaintiffs' requests may be interpreted to seek all documents related to the closing of stores within the region. If

this was in fact what the plaintiffs sought, the scope of the requests would encompass non-relevant documents and information. However, the plaintiffs included qualifying examples, making it apparent that they sought only the information from the store closing activities and procedures that affected employment relationships. For example, Big Lots must include employment status documents but exclude documents related to construction contracts or other similar ancillary activities that may have occurred when a retail store closed. When applied to "announcements" this would include human resources bulletins but exclude advertising and marketing documents. The scope of this request is ascertainable and can be completed as directed.

Big Lots further argues that both requests for store closing documents are overly burdensome and akin to a "fishing expedition." Big Lots feels that the plaintiffs' geographic limitations would produce "countless" documents. Beyond these conclusory statements, Big Lots does not explain how such a request would be so burdensome. Regardless, "the mere fact that [a party] will be required to expend a considerable amount of time, effort, or expense in answering the [request] is not a sufficient reason to preclude discovery." ***Schaap v. Executive Inds., Inc.*** 130 F.R.D. 384, 387 (N.D. Ill. 1990).

As for Interrogatory 13 and Request 31 specifically, the plaintiffs' intended scope of information was clear. The plain-

11

tiffs did not seek all details of store closings. Rather, they sought all information related to how the store closing affected employment relationships, specifically transfers. Therefore, the discovery requests shall be limited to information related to the employment relationship for all associates affected by store closings in Region 7 from 2007 to 2010. Accordingly, the plaintiffs' Motion to Compel Discovery Responses to Request 31 and Interrogatory 13 is **GRANTED** subject to the limitations set forth.

Next, the plaintiffs seek information related to all employee transfers that occurred in Indiana between 2007 and 2010. Big Lots argues that other employee transfers are not relevant. This argument is without merit because information related to other similarly situated transferees in the relevant geographic region can be used by the plaintiffs to establish pretext or a pattern and practice. See *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Although the type of information sought is relevant, the plaintiffs' geographic scope is not. The plaintiffs requested all transfer documents for employees within the geographic region of Indiana. Indiana is divided into two regions, Region 5 and 7. The regions employed different supervisors who were responsible for implementing the transfer policies. Consequently, regional supervisors who were not responsible for implementing the transfer policy in the region where stores 1739 and 5088 are located

are unnecessarily included in the plaintiffs' "Indiana" limitation.

To remedy this, and to ensure discovery only encompasses the motives of the supervisors who made the employment decisions affecting the plaintiffs and other employees similarly situated, the court will limit the plaintiffs' transferee data request to Region 7. The record reveals that Region 7 includes all or parts of 16 states. Big Lots complains that providing information for this region is overly burdensome because it "*could* contemplate hundreds of transfers between stores . . . ." and it has no ascertainable method for identifying transferees. (emphasis added) (Deft. Mem. p. 16) Big Lots claims that it would have to sift through each personnel file in each store over the relevant time period to determine which employees were affected by the transfer policy. Big Lots' argument does not meet the required level of specificity to establish that a request is unduly burdensome because, without more proof, it can just as easily be argued that the request will lead to several transfers instead of hundreds. Without more, an unsupported claim of undue burden is mere speculation. The amount and disorganization of the records alone does not preclude discovery. See **Rawat v. Navistar Int'l. Corp.,** 2011 WL 3876957, *11 (N.D. Ill. Sept. 1, 2011) (*citing* **Schaap,** 130 F.R.D. at 387).

Because the relevant managers may have implemented their policies across the entire region, the information sought from Region 7 is relevant to the plaintiffs' claim. Therefore, the plaintiffs' Motion to Compel Discovery Responses to Interrogatory 14 is **GRANTED** as limited to Region 7.

Next, in Interrogatories 2 and 9 and Requests 8 and 9, the plaintiffs seek all prior complaints of age and race discrimination along with the identities of the individuals who made the complaints. Big Lots acknowledges that there may be relevant information as it pertains to complaints and lawsuits against the supervisors involved in the hiring process for Store #5088, but it objects to evidence pertaining to additional stores as not probative and will fail to establish a pattern or practice of discrimination.

The court already has explained the plaintiffs' need for information related to other similarly situated transferees requires a broader scope than the two stores at issue to establish a policy or practice across the region. Moreover, evidence of other employees' complaints of discrimination may be relevant to establish pretext. See *McDonnell Douglas Corp.,* 411 U.S. at 804-05, 93 S.Ct. at 1817 (stating that an employer's general policy and practice with respect to minority employment may be relevant to establish pretext). Big Lots insists that the plaintiffs may obtain the information requested through public

forums.  However, not all relevant information is reported in those forums.  Therefore, Big Lots must produce discovery pertaining to prior complaints and lawsuits alleging race or age discrimination that occurred in Region 7 between 2007 and 2010.  The plaintiffs' Motion to Compel Discovery Responses to Interrogatories 2 and 9 and Requests 8 and 9 is **GRANTED** subject to the limitations set forth.

The plaintiffs' Request 26 sought the plaintiffs' supervisors' work performance documents.  However, the parties resolved this matter subsequent to the filing of the plaintiffs' motion to compel.  Therefore, the motion to compel is **DENIED AS MOOT** as to this request.

Finally, this court must assess the defendant's Cross Motion to Compel Discovery from Plaintiffs.  Local Rule 37.1(a) requires that parties to a discovery dispute "converse, confer, compare views, consult and deliberate."  ***Barbour v. Memory Gardens Mgmt. Corp.***, 2008 WL 1882847, *1 (N.D. Ind. 2008).  Although Big Lots was resistant in the initial discovery request, it nonetheless conversed with the plaintiffs via letter, email, and phone conversations.  Such communications satisfy Local Rule 37.1(a) as applied to those discovery differences which were in fact the subject matter of the communication.

As for Big Lots' assertion that the plaintiffs have failed to provide initial tax return information, prior complaints,

attempts at future employment, earnings since termination, and supplement responses, Big Lots did not include these inadequacies when communicating with the plaintiffs about discovery. It is true that Big Lots sent a letter on February 6, 2012, that referenced some of the plaintiffs' discovery deficiencies; however, the duty to confer requires "more than mailing a letter to opposing counsel." *Williams v. Bd. Of County Comm'rs of Unified Gov't of Wyandotte County and Kansas City, Kan.*, 192 F.R.D. 698, 700 (D. Kan. 2000). As such, the plaintiffs did not have an opportunity to cure any alleged discovery dispute as it pertained to its own omissions. Once the plaintiffs became aware of Big Lots' contentions, it supplemented its discovery as needed. Therefore, because Big Lots did not comply with Local Rule 37.1(a) regarding the plaintiffs' discovery omission, and because the plaintiffs provided the information sought after the issue was raised, Big Lots' Cross Motion to Compel Discovery is **DENIED.**

Based on the foregoing, the Motion to Compel Certain Discovery Responses [DE 47] filed by the plaintiffs on February 24, 2012, is **GRANTED IN PART** and **DENIED IN PART AS MOOT,** and the Motion to Compel Discovery from Plaintiffs [DE 48] filed by the defendant on March 28, 2012, is **DENIED.**

ENTERED this 21st day of May, 2012

								s/ ANDREW P. RODOVICH
								   United States Magistrate Judge